IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DWAYNE L. BURGESS,

    Plaintiff,                      No. CIV S-03-0643 GEB GGH P

    vs.

CHERYL K. PLILER,               ORDER &

    Defendant.              FINDINGS AND RECOMMENDATIONS

_____ /

Introduction

        Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983. Pending before the court are: 1) plaintiff's motion to compel production of documents, filed on May 16, 2005, to which defendants did not file an opposition; 2) defendants' July 5, 2005 motion to dismiss pursuant to nonenumerated Fed. R. Civ. P. 12(b) for failure to exhaust administrative remedies, and for summary judgment, pursuant to Fed. R. Civ. P. 56, to which plaintiff filed an opposition, after which defendants filed a reply.

\\\\\
\\\\\
\\\\\
\\\\\

1

Plaintiff's Allegations

This matter is proceeding on a first amended complaint, filed on October 6, 2003,[1] against defendants Johnson, Chisum, Bledsoe, Pugh, King and Rogers,[2] all of whom plaintiff alleges were deliberately indifferent to a serious medical injury he suffered. The court sets forth plaintiff's allegations as previously exhaustively detailed (altered only by corrections of minor typographical errors) in its Order filed on March 1, 2005.

> On the morning of September 29, 2001, while playing basketball in the New Folsom State Prison gym, plaintiff ruptured his left Achilles tendon. First Amended Complaint (FAC), p. 5. Plaintiff informed Correctional Officer (C/O) Mendoza, not a defendant, that his "foot was numb" and that he "couldn't feel the floor." Id. Plaintiff could not feel his Achilles tendon, and C/O Mendoza told plaintiff that he appeared to have an injury to his Achilles tendon; Mendoza called for an escort for plaintiff to the clinic. Id.
>
> Plaintiff was transported first via gurney by non-defendants Sergeants Simms and Gold, then by wheelchair by non-defendant C/O Quinn to the medical clinic. FAC, pp. 5-6. C/O Quinn stated that plaintiff had picked the wrong day to injure himself "because everyone complained about this medical trained assistant (M.T.A.)," whose name he did not know. Id., p. 6.
>
> When plaintiff explained to M.T.A. C. Chisum that his injury had occurred when plaintiff went up for a rebound while another inmate was coming down and struck the back of plaintiff's left ankle with his forearm, defendant Chisum told plaintiff that his injury "couldn't have happened that way." Id. Plaintiff told defendant Chisum he was in too much pain to argue, that his "foot was numb" and his "Achilles was gone." Defendant Chisum ordered plaintiff to stand up so she could make an assessment, but plaintiff told her it was too painful for him to stand and that his equilibrium was off. Id. Plaintiff attempted to stand, almost fell and was assisted back to his wheelchair by C/O Quinn. Id., p. 7. Plaintiff told defendant Chisum that he had had a sprained ankle before and that the pain he was now suffering was different and "more excruciating." Defendant Chisum nevertheless told plaintiff that he had only a sprained ankle, had good range of motion and proceeded to wrap an Ace bandage around plaintiff's foot and

---

[1] The original complaint was filed on March 31, 2003.

[2] Defendants Pliler, Rosario, and Vancor were dismissed from the first amended complaint by Order, filed on April 6, 2004, adopting Findings and Recommendations, filed on January 23, 2004.

ankle, gave him two days' worth of Tylenol and ice, a two-day "lay-in," and a cane. Id. When plaintiff asked to see a physician, defendant Chisum told him that, although there was an on-duty or on call doctor, plaintiff had only suffered a non-emergency sprained ankle and would have to return to his cell. Id.

When on October 2, 2001, plaintiff received a medical ducat for x-rays at the main infirmary on A-yard, defendant C/O Bledsoe, who was responsible for transporting B-yard inmates to A-yard for medical procedures that day, told plaintiff after he was paged and had hobbled to the administration office, that he would either walk or his appointment would be cancelled as "refused." FAC, p. 8. Plaintiff had shown defendant Bledsoe that his foot had fluid visibly on or in it and had told her that he had suffered a separated Achilles and could not walk all the way. Id. Nonetheless, defendant Bledsoe refused to allow him transport via van or wheelchair and plaintiff was force to limp and drag one foot while handcuffed and with a cane for approximately half of mile for his x-rays. Id.

On October 3, 2001, plaintiff was assisted by another inmate to the B-yard medical clinic, where he asked defendant Pugh to summon medical personnel to tell them that he had a medical emergency, an injured Achilles, that had been untreated for four (4) days. FAC, p. 9 & Exhibit A-1. Defendant Pugh refused, saying "No ducat, no doctor. I don't care what you're excuse is." Id. Defendant Pugh ordered plaintiff away from the gate. Id.

On October 4, 2001, plaintiff returned to B-yard medical clinic for medical treatment. FAC, p. 10. Defendant MTA Johnson was taking a cigarette break and, when told by plaintiff that he needed to see a doctor for his Achilles tendon injury and that he was in "a lot of pain," continued to smoke, whereupon plaintiff told her that he had not seen a doctor for five days and showed her his foot, saying that he had a fluid build-up and a medical emergency. Id.

Defendant Johnson responded: "It can't be much of an emergency because you walked down here." Id. Defendant Johnson told plaintiff to fill out a sick call form 7362, but when plaintiff asked that she put him on the doctor's "line add-on list," she refused. Id., & Exhibit A-2.

On afternoon yard release on October 4, 2001, plaintiff left his cell and refused to lock up when C/O Orr (not a defendant) told him to. FAC, p. 11. Plaintiff told C/O Orr that he had been in intense pain for five days and had not gotten a full night's rest since his injury and that he had been denied medical treatment several times. Id. & Exhibit A-3. C/O Orr told plaintiff to stand by and thereafter informed MTA Howell (not a defendant) that plaintiff had what appeared to be a serious injury. FAC, p. 11. Howell placed plaintiff on the doctor's add-on list, plaintiff was seen by Dr.

3

1   Burvant (not a defendant) that day at around 2:00 p.m. and was diagnosed with a ruptured or severed Achilles tendon. Id.

2

3   On October 5, 2001, plaintiff's lower leg was immobilized in a splint at CSP-Sac IV. Id. On October 22, 2001, plaintiff's lower left calf, from knee to toes, was placed in a cast by non-defendant Dr. Kofoed, an orthopedic specialist, at CSP-Vacaville. Id. On January 14, 2002, Dr. Kofoed removed plaintiff's cast with specific instructions that plaintiff's rehabilitation start immediately, explaining that therapy and walking exercises were crucial to his recovery. FAC, pp. 11-12.

4

5

6

7   From January 14, 2002 until May 28, 2002, plaintiff was confined to his cell due to an institutional lockdown for 24 hours a day. FAC, p. 12. After repeated pleas to correctional officers and a doctor that he was being deprived of his appropriate therapy and walking routine, plaintiff was allowed one visit to a therapist, Ms. Mounts (not a defendant) in mid-May. Id. Although defendant King was aware of plaintiff's injury and the prescribed walking routine, King refused to confirm the doctor's orders by calling Medical Records so that he could get his superior's approval to allow plaintiff to walk outside his cell. Id.

8

9

10

11

12

13   On May 2, 2002, defendant King asked defendant Sgt. Rogers if plaintiff was to be allowed to walk outside his cell. Id. Defendant Rogers told defendant King that plaintiff was low priority and denied the request. Id. Defendant King told plaintiff to provide him with doctor's orders, which plaintiff did on May 8, 2002, after he saw non-defendant Dr. Borges, who provided a chrono stating that plaintiff should be allowed to walk outside his cell for 30 minutes a day. Id. Nevertheless, defendant King still did not comply with the chrono. FAC, p. 13.

14

15

16

17

18   On May 20, 2002, plaintiff appealed to C/O Edwards (a non-defendant) who told defendant Rogers that plaintiff per the chrono was to be allowed the 30 minutes of walking exercise daily. Id. Defendant Rogers' response was that plaintiff was a "low priority." Id. Finally, on May 28, 2002, C/O Simons and Sgt. Just (not defendants) saw that the chrono was honored. Id.

19

20

21   Plaintiff alleges that defendants violated his Eighth and Fourteenth Amendment rights, as well as prison regulations, by their deliberate indifference to his serious medical needs and their conduct resulted in his having a deformed left calf, excessive scar tissue and continuing severe muscle cramping, as well as mental and emotional injury. FAC, pp. 16-19. Plaintiff seeks declaratory and injunctive relief, as well as money damages.

22

23

24

25  See Order, filed on March 1, 2005, pp. 5-9.

26  \\\\\

4

Motion to Compel

Plaintiff filed his putative motion to compel discovery, not only without a notice of motion, but also without filing the precise requests at issue that he served or the responses he received from defendants that he challenges. He is seeking, as far as the court can discern, production of documents with respect to three production requests, but, in doing so, has failed to comply with E.D. Local Rule 34-250(c). See Discovery Order, filed on June 4, 2005. While he made some effort to re-create the requests and the responses that he finds unsatisfactory, he has not met his burden to place the responses at issue. Under L.R. 34-250(c), "that part of the request for production, response or proof of service that is in issue shall be filed." Without the precise request and response, the court is unable to adjudicate plaintiff's motion. The court has noted that defendants failed to respond to the motion, but it is plaintiff's failure to file adequate notice of his motion and to otherwise meet his initial burden by complying with the Local Rules that has rendered the motion defective. Plaintiff's motion to compel will be denied.

Motion to Dismiss

Defendants move for dismissal pursuant to nonenumerated Fed. R. Civ. P. 12(b), contending that plaintiff failed to exhaust his administrative remedies.

*Failure to Exhaust - Legal Standard under Non-Enumerated Fed. R. Civ. P. 12(b)*

In a motion to dismiss for failure to exhaust administrative remedies under non-enumerated Rule 12(b) of the Federal Rules of Civil Procedure, defendants "have the burden of raising and proving exhaustion." Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003). The parties may go outside the pleadings, submitting affidavits or declarations under penalty of perjury, but plaintiff must be provided with notice of his opportunity to develop a record. Wyatt v. Terhune, 315 F.3d at 1120 n.14. The court provided plaintiff with such fair notice by order filed on March 11, 2004.

Should defendants submit declarations and/or other documentation demonstrating an absence of exhaustion, making a prima facie showing, plaintiff must refute that showing;

5

however, the ultimate burden remains with defendants.  Plaintiff may rely upon statements made under the penalty of perjury in the complaint if the complaint shows that plaintiff has personal knowledge of the matters stated and plaintiff calls to the court's attention those parts of the complaint upon which plaintiff relies.  If the court determines that plaintiff has failed to exhaust, dismissal without prejudice is the appropriate remedy for non-exhaustion of administrative remedies.  Wyatt v. Terhune, 315 F.3d at 1120.42

*PLRA Requirements*

The Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a) provides that, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  Inmates seeking injunctive relief must exhaust administrative remedies.  Rumbles v. Hill, 182 F.3d 1064 (9th Cir. 1999).  In Booth v. Churner, 532 U.S. 731,121 S. Ct. 1819 (2001), the Supreme Court held that inmates must exhaust administrative remedies, regardless of the relief offered through administrative procedures.  532 U.S. at 741, 121 S. Ct. at 1825.  Therefore, inmates seeking money damages must also completely exhaust their administrative remedies.  Booth v. Churner, 532 U.S. 731, 121 S. Ct. 1819 (inmates seeking money damages are required to exhaust administrative remedies even where the grievance process does not permit awards of money damages).  42 U.S.C. § 1997e(a) provides that no action shall be brought with respect to prison conditions *until* such administrative remedies as are available are exhausted.  McKinney v. Carey, 311 F.3d 1198 (9th Cir. 2002).

*Administrative Exhaustion Procedure*

In order for California prisoners to exhaust administrative remedies, they must proceed through several levels of appeal:  1) informal resolution, 2) formal written appeal on a CDC 602 inmate appeal form, 3) second level appeal to the institution head or designee, and 4) third level appeal to the Director of the California Department of Corrections.  Barry v. Ratelle,

985 F. Supp. 1235, 1237 (S.D. Cal. 1997) (citing Cal. Code Regs. tit. 15, § 3084.5). A final decision from the Director's level of review satisfies the exhaustion requirement. Id. at 1237-38.

*Defendants' Contentions*

Defendants identify plaintiff's inmate appeal log no. SAC-H-01-02622, for which plaintiff received a third level director's appeal decision on May 24, 2002, as inadequate to constitute exhaustion of administrative remedies as to each defendant because he does not therein identify any defendant against whom he raises a grievance. Motion to Dismiss (MTD), pp. 5-6; Exhibit (Exh.) A, Declaration of N. Grannis, Chief of Inmate Appeals Branch, and attachments. On the 602 appeal, no. 01-02622, plaintiff explains that he is filing that appeal because his original appeal, dated and logged on 10/12/01, was deemed lost by M.T.A. Johnson (a defendant herein). MTD, Exh. A, attachment 3, p. 2. Plaintiff states that he is directing the appeal to the Chief Medical Officer with regard to the treatment he received from medical staff on 10-29-01 for a separated Achilles tendon. Id. He considers that the nature of the injury and the delay of treatment to constitute deliberate indifference to a serious medical need and requests that he be provided medical care by "professional care givers and not M.T.A. staff that acts indifferent to serious medical needs." Id. He dates his appeal as submitted on 10/12/01 and on 11/13 (with the year obscured in the copy submitted, but presumably, also in 2001). Id.

In addition to faulting plaintiff for failing to identify any defendant by name, defendants also aver that his claims against defendants Chisum, Johnson, Bledsoe, and Pugh herein predate the event he complains of in his inmate grievance, that his claims against defendants King and Rogers occur significantly later than the event he complains of in the grievance, that he does not identify any form of relief desired as to any defendant herein, other than asking for medical attention from doctors rather than medical technical assistants, and that he failed to submit any other appeal that received a third level director's decision related to his separated Achilles tendon. MTD, p. 6, Exh. A, Grannis dec. and attachments.

\\\\\

According to N. Grannis, plaintiff must identify each individual against whom he raises a grievance, specifically state a claim against each such person, and identify the form of relief he seeks; failure to do so results in failure to exhaust those issues through the administrative appeal process. MTD, p. 6, Exh. A, § ¶4.

*Opposition*

Plaintiff asserts that he is seeking money damages in this civil rights action for incidents resulting in violations of his rights under the Eighth Amendment, occurring from September 29, 2001 until October 4, 2001, and from January 14, 2002 until May 24, 2002. Opposition (Opp.), pp. 1-2. Plaintiff states that he no longer seeks any relief but money damages, averring that in his motion for leave to file a third amended complaint, which was denied,[3] he sought to abandon any injunctive relief claim and that in his pretrial statement he intends to formally abandon any claim for declaratory and injunctive relief.[4] Opp., p. 4, plaintiff's Declaration in Support of Opp., ¶¶ 2,3. He contends, mistakenly, that he need not seek exhaustion of administrative remedies for his claims seeking money damages, citing Rumbles, supra. Opp., pp. 3-4. Based on plaintiff's assertions of his intent, the court will recommend that his representations with respect to narrowing his claim for relief be deemed a motion for voluntary dismissal of any claim for declaratory and injunctive relief, be granted, and this action proceed only on a claim for money damages.

As to his having not named individual defendants or filed additional grievances, plaintiff argues that the rejection criteria for screening inmate appeals precludes an inmate from duplicating an appeal or filing more than one non-emergency appeal within a seven-calendar day

\\\\\

\\\\\

---

[3] See Order filed on March 1, 2005.

[4] Plaintiff did subsequently abandon his declaratory and injunctive relief claims in a pretrial statement, prematurely filed on August 22, 2005.

period.  Opp., pp. 3-4, citing, inter alia, Cal. Code Regs. tit. xv, §§ 3084.3(c)(2),[5] 3084.4(a)[6] and 3084.5.[7]  He asserts that his grievance was not returned to him upon screening for any deficiency, pursuant to Cal. Code Regs. tit. xv, § 3084.3(d).[8]  Opp, p. 4.  He asserts that it would have been counter-productive to have risked having his grievance suspended for "abuse of the appeals system" by filing numerous appeals premised on the same issue, deliberate indifference, citing  Cal. Code Regs. tit. xv §§ 3084.3(c)(2) and 3084.4(a)(1).  Id.

Finally, in his "response to defendants' statement of undisputed facts," a statement defendants did not file in this court (see Motion for Summary Judgment below), plaintiff concedes that in his inmate appeal he misidentified the date as October 29, 2001, rather than September 29, 2001, but points to the third level review decision as proof of exhaustion of the claim at issue.[9]

*Reply*

Defendants argue that plaintiff admits that in his exhausted appeal he does not identify any of the defendants herein as individuals against whom he has raised a grievance and

\\\\\

---

[5] "Rejection criteria.  An appeal may be rejected for any of the following reasons:................................... (2) The appeal duplicates the appellant's previous appeal upon which a decision has been rendered or is pending."  Cal. Code Regs. tit. xv, § 3084.3(c)(2).

[6] "Excessive filings.  One appellant's submission of more than one non-emergency appeal within a seven-calendar-day period shall be considered excessive."  Cal. Code Regs. tit. xv, § 3084.4(a).

[7] "Levels of Appeal Review and Disposition."  Cal. Code Regs. tit. xv, § 3084.5.  These levels are set forth in a preceding section herein, entitled "Administrative Exhaustion Procedure."

[8] "Written rejection.  When rejecting an appeal, the appeals coordinator shall complete an Appeals Screening Form, CDC Form 695 [], explaining why the appeal is unacceptable.  If rejection is based on improper documentation, the form shall provide clear instructions regarding further action the inmate must take to qualify the appeal for processing."  Cal. Code Regs. tit. xv, §3084.3(d)

[9] The second level argument set forth in the third level appeal decision correctly identifies the date of the ankle injury as occurring on September 29, 2001, despite plaintiff's mistake.  See MTD, Exh. A, attachment 3.

correctly observe that with respect to the issue of the requirement of exhausting claims seeking money damages, Rumbles, supra, has been overruled by Booth, supra. Reply, p. 2.

*Discussion*

Defendants are correct that plaintiff is not excused from seeking administrative remedies for his money damages claims. Booth, supra, 532 U.S. at 741, 121 S. Ct. at 1825. The question becomes whether and to what extent plaintiff has exhausted his administrative remedies with respect to plaintiff's pending allegations in the appeal receiving a Director's Level decision on May 24, 2002. Given that exhausting administrative remedies should not be governed by strict, perhaps archaic, pleading rules which govern formal litigation, determining when exhaustion of a claim implicates exhaustion of parties should be based on a common sense application of the purpose of exhausting administrative remedies, i.e., informing prison officials of a problem and who might be involved. In a claim of excessive force, for example, failure to pursue claims against a particular individual whose identity is known to a plaintiff could be deemed a waiver. However, generally, in the case of, as here, an inadequate medical care claim, a plaintiff may not be required to name each medical staff member who might be implicated because the participation of all prison officials in a medical determination may not be apparent to a prisoner ten or so days from the date of determination.

It is plain that prison officials processing plaintiff's grievance were aware of the date of the achilles tendon injury underlying plaintiff's allegations and defendants' reference to the date of the event identified in the grievance predating his claims against defendants Chisum, Johnson, Bledsoe, and Pugh is arguably disingenous. Nor does defendants' declarant, N. Grannis, cite any authority for the onerous requirement that plaintiff must identify each individual against whom he raises a grievance, specifically stating a claim against each such person, and identifying the form of relief he seeks. Moreover, even if procedural default in exhaustion was appropriate, the administrative decisions do not invoke it. Plaintiff has a point in noting that any effort to file specific grievances as to each person related to the same claim of

deliberate indifference to his medical needs arising from one injury (should he have failed to be all-inclusive in the initial grievance) would have very likely complicated, if not hampered completely, the processing of his initial grievance in light of the applicable prison grievance regulations he has cited.

To the extent that defendants argue that plaintiff's grievance with respect to "M.T.A. staff," cannot be deemed to have included defendant correctional officers Bledsoe and Pugh, it is reasonably clear by plaintiff's allegations herein that defendant C/O Bledsoe, responsible for transporting B-yard inmates to A-yard for medical procedures on 10-2-01 (FAC, p. 8), and defendant Pugh, apparently assigned to B-yard medical clinic on 10-3-01 (FAC, p. 9), would be broadly included in plaintiff's complaint about having been subjected to indifferent staff and not having received medical attention for his injury "from professional care givers." See MTD, Exh. A, attachment 3, p. 2. As to defendants Chisum and Johnson, both M.T.A.'s, the failure to identify specifically individual M.T.A.'s whose identity would have to either be evident in the record of plaintiff's treatment or the schedule of who was assigned on a particular day to plaintiff's facility, defendants' contention is particularly weak. Plaintiff dates his initial "lost" grievance as having been filed on 10-12-01 (further evidence that plaintiff's dating of his injury in the grievance as having occurred on 10-29-01, rather than 9-29-01 was simply a mistake, and not intended to signify a separate, unrelated incident), which encompasses the activities of defendants Chisum, Bledsoe, Pugh and Johnson. The court will recommend denial of defendants' motion as to these defendants.

As to defendants King and Rogers, plaintiff cannot be said to have exhausted administrative remedies as to these individuals, since the incidents in which they are implicated (from January, 2002 through May, 2002) did, indeed, arise after plaintiff initiated the grievance, whether dated 10/12/01 or 11/13/01, which was exhausted on 5/24/02. The court will recommend granting defendants' motion for plaintiff's failure to exhaust administrative remedies as to these two defendants.

Finally, because the Ninth Circuit has rejected a "total exhaustion-dismissal rule," it is appropriate for the court to recommend dismissal of only those defendants against whom plaintiff's claims have not been administratively exhausted, rather than dismissal of the entire action. Lira v. Herrera, 427 F.3d 1164 (2005).

Motion for Summary Judgment

Defendants purport to bring a summary judgment motion, pursuant to Fed. R. Civ. P. 56, but, in doing so, have failed to comply with E.D. Local Rule 56-260(a), which requires that a motion for summary judgment be accompanied by a statement of undisputed facts, wherein the specific material facts are discretely enumerated with citation to the particular portions of the evidentiary documents which is relied on to establish each such fact. It appears that defendants' failure to file the statement of undisputed facts was inadvertent, as defendants have filed a certificate of service indicating that the statement of undisputed facts was served on plaintiff and, in his opposition, plaintiff appears to be responding to such a statement. Nevertheless, the court cannot adjudicate the defectively filed motion as all the requisite documents for doing so are not before it. The undersigned, therefore, has little alternative but to vacate the motion for summary judgment, without prejudice to re-notice of the motion, accompanied by the appropriate statement of undisputed facts, within 15 days.

Accordingly, IT IS ORDERED that:

1. Plaintiff's unopposed but defective motion to compel production of documents, filed on May 16, 2005, is denied.

2. Defendants' July 5, 2005 motion for summary judgment is vacated without prejudice for defendants' failure to have complied with E. D. Local Rule 56-260(a), as set forth above; and

3. Defendants must file their statement of undisputed facts, along with a re-notice of motion for summary judgment, within 15 days;

\\\\\

4. Upon defendants' filing and re-notice, plaintiff may file a supplemental opposition within 30 days thereafter; if plaintiff does not choose to do so, the court will deem the matter submitted upon expiration of plaintiff's time for filing any supplemental opposition.

IT IS HEREBY RECOMMENDED that:

1. Defendants' July 5, 2005 motion to dismiss, pursuant to nonenumerated Fed. R. Civ. P. 12(b), for failure to exhaust administrative remedies be granted in part and denied in part as follows:

a) Granted as to plaintiff's claims against defendants King and Rogers and that defendants King and Rogers be dismissed from this action;

b) Denied as to plaintiff's allegations against defendants Chisum, Bledsoe, Pugh and Johnson and this action proceed as to these defendants;

2. Plaintiff's representations that he has abandoned his claims for declaratory and injunctive relief be construed as a motion for voluntary dismissal of these claims for relief and said motion be granted, and this action proceed against the remaining defendants on a claim of money damages only.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections shall be served and filed within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 2/3/06                                              /s/ Gregory G. Hollows

                                                           _____
                                                           GREGORY G. HOLLOWS
                                                           UNITED STATES MAGISTRATE JUDGE

GGH:009 - burg0643..mtd+